UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ENVIRONMENTAL INTEGRITY PROJECT, <br> 1000 Vermont Avenue NW, Suite 1100 <br> Washington, D.C. 20005, and <br><br> CHESAPEAKE CLIMATE ACTION NETWORK, <br> 6930 Carroll Ave, Suite 720 <br> Takoma Park, Maryland 20912 <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL <br> PROTECTION AGENCY and <br> GINA McCARTHY, <br> Administrator, <br> 1200 Pennsylvania Ave. N.W. <br> Washington, D.C. 20460 <br><br> *Defendants.* | Civil Action No.: 1:14-cv-1972 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Plaintiffs Chesapeake Climate Action Network and Environmental Integrity Project seek to compel Defendants, the United States Environmental Protection Agency and Gina McCarthy, Administrator of the United States Environmental Protection Agency (collectively, "EPA"), to respond to Plaintiffs' April 19, 2012 petition for reconsideration under the Clean Air Act. More than two and half years have passed since Plaintiffs submitted their petition to EPA, and EPA's failure to respond constitutes undue delay in violation of the Clean Air Act and the Administrative Procedure Act.

2. Under the rule-making provisions of Section 307 of the Clean Air Act, 24 U.S.C. § 7607, if the grounds for an objection to a rule arise after the period for comment and that

objection is of central relevance to the outcome of the rule, EPA must convene a proceeding for reconsideration.

3. In 2012, pursuant to Section 112 of the Clean Air Act, EPA promulgated the landmark Mercury and Air Toxics Standards ("MATS Rule"), which includes emission standards for a number of hazardous air pollutants, including non-mercury toxic metals, from coal- and oil-fired "electric utility steam generating units" — large boilers that burn coal or oil to produce electricity for sale. Most power plants include several such units. This Complaint only addresses the portion of the MATS Rule related to the emissions of non-mercury metals from *existing* power plants.

4. As part of the rulemaking, EPA included significant language in the final rule that was not included in the proposed rule.

5. Specifically, the final rule allows existing power plants to demonstrate compliance with the limit for non-mercury metals through a parameter based on the highest hour of emissions from the most recent annual "stack test" — *even if emissions from that highest hour are above the actual limit for non-mercury metals*. Because this option could allow these plants to show compliance through a signal corresponding to emissions higher than the actual limit, and because Plaintiffs had no opportunity to comment on this parameter monitoring option during the comment period for the MATS Rule, Plaintiffs filed their petition for reconsideration on this issue with EPA. Resolution of this issue is of central relevance to the outcome of the MATS Rule, as this monitoring option does not provide a reasonable assurance of compliance with the limit (as the option is required to do under the Clean Air Act). Because Plaintiffs had no opportunity to raise this centrally-relevant issue during the proposed rule's comment period, reconsideration is required under Section 307 of the Clean Air Act.

6. Nevertheless, despite the passage of two and a half years since Plaintiffs filed their petition for reconsideration, EPA has not responded to the petition or taken any public action on the petition. This is true even though, in April 2013 in separate reconsideration proceedings for *new* power plants under the MATS Rule, EPA rejected parametric monitoring based on the highest hour of emissions. Likewise, EPA rejected a similar parametric monitoring structure in promulgating final regulations for cement kilns in February 2013. Because the MATS Rule's compliance deadline for existing plants is April 16, 2015 (less than five months away), the need for resolution of Plaintiffs' petition is urgent.

7. If reconsideration proceedings are not convened and completed promptly, EPA will have avoided applicable notice and comment procedures (which are statutorily-required to allow for public participation) by omitting a significant provision from its proposed MATS Rule and then inserting into the final rule a parametric monitoring option that cannot ensure compliance. This Court should remedy EPA's undue delay in responding to Plaintiff's petition for reconsideration by ordering EPA to respond to the petition within 30 days.

## JURISDICTION AND VENUE

8. This action is brought under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 551-59, 702-06.

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, which provides the district courts with original jurisdiction over all civil actions arising under the laws of the United States.

10. The relief requested is authorized under 28 U.S.C. §§ 2201 (declaratory relief) and 2202 (injunctive relief).

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because Defendant EPA has its principal office in the District of Columbia, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, and Plaintiff Environmental Integrity Project ("EIP") has its headquarters here.

## PARTIES

12. Plaintiff EIP is a national nonprofit organization organized and existing under the laws of the District of Columbia. EIP is dedicated to advocating for more effective enforcement of environmental laws, with a specific focus on the Clean Air Act and power plants like those covered in the MATS Rule.

13. EIP's ability to monitor compliance and enforcement under the Clean Air Act would be adversely affected if the MATS Rule allowed existing power plants to show compliance through monitoring corresponding to emissions higher than the actual limits under the Rule.

14. Plaintiff Chesapeake Climate Action Network ("CCAN") is a nonprofit organization organized and existing under the laws of the State of Maryland. CCAN was founded to transition its region (specifically Maryland, Virginia and Washington, D.C.) towards clean-energy solutions to climate change. CCAN's efforts to transition to a clean-energy-powered society include ensuring that power plants do not threaten public health or the environment through emissions of hazardous air pollutants. CCAN has over 90,000 members in Maryland, Virginia and Washington, D.C., and those members live, work and recreate on a regular basis in and around power plants located in those states and the District.

15. CCAN's members would be exposed to excess pollution if the MATS Rule allowed existing power plants to show compliance through monitoring corresponding to emissions higher than the actual limits under the Rule.

16. The environmental, health, aesthetic, economic, informational and recreational interests of Plaintiffs and their members have been and will continue to be adversely affected by Defendants' continued failure to act on Plaintiffs' petition for reconsideration.

17. Defendant EPA is a federal agency with its principal offices located in Washington, D.C. EPA is charged with "protect[ing] and enhance[ing] the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b).

18. Defendant Gina McCarthy is sued in her official capacity as the Administrator of the EPA. As EPA Administrator, Ms. McCarthy has final responsibility for EPA's actions and for ensuring that EPA complies with and fully implements the Clean Air Act in keeping with Congress' intent.

## LEGAL AND FACTUAL BACKGROUND

**The Clean Air Act's Unreasonable Delay Provision**

19. Section 304(a) of the Clean Air Act provides that the "district courts of the United States shall have jurisdiction to compel . . . agency action unreasonably delayed." 42 U.S.C. § 7604(a).

20. Section 304(a) requires that written notice of intent to bring suit for unreasonable delay under the Act be provided to EPA 180 days before commencement of suit. 42 U.S.C. § 7604(a). On April 30, 2014, Plaintiffs provided EPA with the required notice for this lawsuit. A copy of this written notice is attached hereto as Exhibit 1 and incorporated by reference. The 180-day notice period expired on October 27, 2014.

**Unreasonable Delay Under the Administrative Procedure Act**

21.     Under the Administrative Procedure Act ("APA"), agencies must "give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).  EPA is an "agency" for purposes of the APA.  *See id.* at §§ 551(1), 701(b)(1).

22.     The APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  *Id.* at § 555(b).

23.     The APA grants a right of judicial review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." *Id*. at § 702.  "Agency action" is defined to include the "failure to act."  *Id*. at § 551(13).

24.     Under the APA, courts "shall compel agency action unlawfully withheld or unreasonably delayed," *id*. at § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. at § 706(2)(A).

**The MATS Rule and the Monitoring Option at Issue**

25.     In 2012, pursuant to Section 112 of the Clean Air Act, EPA promulgated the MATS Rule.  *See National Emission Standards for Hazardous Air Pollutants from Coal and Oil-Fired Electric Utility Steam Generating Units and Standards of Performance for Fossil-Fuel-Fired Electric Utility, Industrial-Commercial-Institutional, and Small Industrial-Commercial-Institutional Steam Generating Units*, 77 Fed. Reg. 9,304 (Feb. 16, 2012) (final rule); 76 Fed. Reg. 24,976 (May 3, 2011) (proposal).

26.     In the MATS Rule, EPA set emission limitations for mercury, acid gases and non-mercury metallic toxics.  These emission limitations define the amount of pollution that may be

emitted when a unit consumes (or produces) energy. To comply with the standard for non-mercury metallic toxics, plants can comply with a limit for filterable particulate matter (basically, soot), or a series of limits on individual metallic pollutants. 77 Fed. Reg. at 9,367-69. Thus, power plants can measure filterable particulate matter as a surrogate for non-mercury metals.

27. For facilities such as the power plants governed by the MATS Rule, EPA "shall" "require enhanced monitoring" for purposes of determining compliance with the emissions limits. 42 U.S.C. §7414(a)(3). EPA must require continuous monitoring of emissions unless alternative methods "provide sufficiently reliable and timely information for determining compliance." *Id.* §7661c(b). EPA's monitoring regime "must 'provide a reasonable assurance of compliance with emissions standards.'" *Sierra Club v. EPA*, 353 F.3d 976, 990-91(D.C. Cir. 2004) (quoting *NRDC v. EPA,* 194 F.3d 130, 136 (D.C. Cir.1999)).

28. Although EPA found that continuous monitoring of particulate matter emissions (as a surrogate for non-mercury metallic toxics) was feasible, the MATS Rule does not require it. 77 Fed. Reg. at 9,384, 9,466 (40 C.F.R. §63.10000(c)(1)(iv)). Instead, the MATS Rule allows sources to choose one of several options to demonstrate compliance with the limit for non-mercury metals.

29. The monitoring option at issue here is the one that EPA expects to be adopted by most power plants. *Id.* at 9,370. Under that option, plants demonstrate compliance with the limit for non-mercury metals through annual, nine-hour stack tests, which measure the amount of pollutants emitted from a facility's smokestack. To demonstrate compliance during those stack tests, the *average* of the emissions measured over the nine hours must be below the limit for non-mercury metals. In between the annual stack tests, plants must demonstrate compliance through

a separate monitoring (or "operating") limit as measured by a "continuous parametric monitoring system" or "CPMS."  This monitoring limit corresponds to the *highest single hour* of emissions measured during the most recent nine-hour stack test — even if that highest hour is above the emissions limit established by the MATS Rule. *Id.* at 9,466, 9,481 (40 C.F.R. §§63.10000(c)(1)(iv), 63.10023).  In other words, the CPMS option used to demonstrate compliance during the time between stack tests can result in emissions above the MATS Rule limit.

30. Because the monitoring limit under the CPMS option corresponds to the *highest* hour of emissions from the most recent annual test, even if emissions during that hour were *above* the emissions limit established by the MATS Rule, 77 Fed. Reg. at 9,481 (40 C.F.R. §63.10023), the CPMS alternative does not "provide a reasonable assurance of compliance with" the standard, as the Clean Air Act requires. *Sierra Club*, 353 F.3d at 990-91; 42 U.S.C. § 7661c(b).

31. Importantly, EPA's proposed MATS rule did not include the CPMS monitoring option; the proposal included parametric monitoring only to supplement (not replace) a requirement to continuously monitor actual emissions, and the proposed parameters corresponded to stack-test averages — not  peak emissions from the single highest hour. 76 Fed. Reg. at 25,052, 25,103.  Without explanation or forewarning, the final MATS Rule eliminated the requirement to continuously monitor emissions and substituted the CPMS option based on maximum hourly emissions.

**EPA's Prior Rejections of Parametric Monitoring Based on the Highest Hour of Emissions.**

32. EPA itself has recognized the problems associated with allowing a monitoring limit higher than the relevant emission limit.  Over a year ago, as part of reconsideration

8

proceedings for new power plants under the MATS Rule, EPA rejected parametric monitoring based on the highest hour of emissions. *New Source Reconsideration: National Emission Standards for Hazardous Air Pollutants from Coal- and Oil-fired Power Plants,* 78 Fed. Reg. 24,073, 24,077-78 (April 24, 2013). EPA did so to "alleviate the potential for setting an operating limit that corresponds to an emissions result higher than the emission standard." Memorandum from Steffan Johnson (Nov. 16, 2012), Docket No. EPA-HQ-OAR-2009-0234-20234.

33. Likewise, a year and a half ago, EPA rejected a similar monitoring structure for cement kilns. There, EPA had originally proposed the use of CPMS for monitoring and tied the monitoring level to the highest one-hour compliance test. In its final rule, however, EPA rejected monitoring based on the highest hour of emissions — stating that it was doing so because the "highest [particulate matter] performance test run may represent, in some circumstances, a number higher than the [particulate matter] emissions standard." *National Emission Standards for Hazardous Air Pollutants for the Portland Cement Manufacturing Industry and Standards of Performance for Portland Cement Plants,* 78 Fed. Reg. 10,006, 10,014 (February 12, 2013) (final rule).

**Plaintiffs' Petition for Reconsideration**

34. Section 307 of the Clean Air Act, provides that if — during notice and comment rulemaking — the "grounds for [] an objection arose after the period for public comment . . . and if such objection is of central relevance to the outcome of the rule, the Administrator *shall* convene a proceeding for reconsideration of the rule and provide the same procedural rights as would have been afforded had the information been available at the time the rule was proposed." 42 U.S.C. § 7607(d)(7)(B).

9

35. Because Plaintiffs had no opportunity during the comment period for the proposed MATS Rule to comment on the problem presented by CPMS monitoring for existing plants being tied to the highest hour of emissions, Plaintiffs filed a petition for reconsideration of this issue on April 19, 2012 pursuant to Section 307 of the Clean Air Act.  Petition for Reconsideration of Final National Emissions Standards for Hazardous Air Pollutants for Fossil-Fuel-Fired Electric Generating Units (Mercury and Air Toxics Standards) (MATS)), Docket ID No. EPA-HQ-OAR-2009-0234-20187 (April 19, 2012).  Plaintiffs' petition is attached here as Exhibit 2.

36. While Plaintiffs' petition for reconsideration raised a number of issues with the MATS Rule, this Complaint seeks to compel EPA to address solely the problem created by allowing existing power plants to demonstrate compliance through CPMS tied to the highest hour of emissions from the most recent annual stack test, even if that highest hour is above the actual limit.

37. Plaintiffs' petition for reconsideration specifically asked EPA to address this problem.  For example, Plaintiffs stated in their petition:  "The parameters monitored under the rule are associated only with the emission levels exhibited during an annual (or triennial) stack test – not the limits themselves."  Petition at 13 (citing 77 Fed. Reg. at 9,481,[1] which discusses the option to demonstrate compliance through CPMS tied to the highest hour of emissions from the most recent annual stack test).  Similarly, Plaintiffs stated in the petition:  "EPA should revise its monitoring to clearly tie exceedances of all of the rule's requirements to violations of the underlying standards."  *Id.*

---

[1] Plaintiffs' petition for reconsideration mistakenly referred to this Federal Register cite as "76 Fed. Reg. 9,481."

10

38. Because the CPMS monitoring option (the option EPA believes most sources will choose) does not provide a reasonable assurance of compliance with the MATS Rule's limit for non-mercury metals, resolution of the highest-hour issue is of central relevance to the outcome of the MATS Rule.

39. The MATS Rule's compliance deadline for existing power plants is April 16, 2015, less than five months away. *See* 77 Fed. Reg. at 9,418.

40. Despite the impending compliance deadline, and even though two and a half years have passed since Plaintiffs filed their petition for reconsideration, EPA has not responded to the petition or taken any public action on the petition.

41. Without resolution of Plaintiffs' petition for reconsideration, Plaintiffs will have no opportunity to challenge the CPMS monitoring option. EPA cannot, consistent with the Clean Air Act, avoid public comment and judicial review of this monitoring option by inserting it, for the first time, into a final rule and then refusing to act on a reconsideration petition.

42. EPA also cannot claim that it lacks the resources to devote to reconsideration of the CPMS option for existing power plants: acting on comments from the power industry after the MATS Rule became final, EPA recently took direct final action to amend the Rule to change its requirements for the data that power plants report to EPA. *See* 79 Fed. Reg. 68,795, 68,796-97 (Nov. 19, 2014). There, to the best of Plaintiffs' ability to determine, EPA took action in the absence of a reconsideration petition.

43. Here, where the compliance deadline for the MATS Rule is less than five months away and where EPA has acknowledged this critical flaw in its highest-hour approach to CPMS monitoring at least twice before (including in the MATS Rule for new plants), EPA's failure to respond to Plaintiffs' petition for reconsideration within two and a half years constitutes

11

unreasonable delay.  EPA's delay is even more unreasonable considering that EPA has expended resources to reconsider separate issues raised by industry.

### FIRST CLAIM FOR RELIEF (VIOLATION OF THE CLEAN AIR ACT)

44. Plaintiffs repeat and incorporate herein by reference each of the allegations set forth above.

45. EPA has a duty under the Clean Air Act to respond to Plaintiffs' April 2012 petition for reconsideration regarding the problem created by allowing existing power plants to demonstrate compliance through CPMS tied to the highest hour of emissions from the most recent annual stack test.

46. EPA has failed to respond to the April 2012 petition for reconsideration.

47. EPA violated the Clean Air Act by failing to respond to the April 2012 petition for reconsideration.  This failure constitutes unreasonable delay, actionable under Section 304 of the Act.  42 U.S.C. § 7604(a).

48. EPA's violation is continuous and ongoing.  EPA will continue to violate the Clean Air Act until it complies with its duty to respond to the portion of the April 2012 petition for reconsideration dealing with the problem created by allowing existing power plants to demonstrate compliance through CPMS tied to the highest hour of emissions from the most recent annual stack test.

### SECOND CLAIM FOR RELIEF (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

49. Plaintiffs repeat and incorporate herein by reference each of the allegations set forth above.

50. EPA has a duty under the APA to respond within a reasonable time to Plaintiffs' April 2012 petition for reconsideration regarding the problem created by allowing existing power

plants to demonstrate compliance through CPMS tied to the highest hour of emissions from the most recent annual stack test.  *See* 5 U.S.C. § 555(b).

51.     EPA has failed to respond within a reasonable time to the April 2012 petition for reconsideration.

52.     EPA's failure to respond to the April 2012 petition for reconsideration constitutes an unreasonable delay contrary to and in violation of the APA.  *See* 5 U.S.C. § 706(2).

53.     EPA's violation is continuous and ongoing.  EPA will continue to violate the APA until it complies with its duty to respond to the portion of the April 2012 petition for reconsideration dealing with the problem created by allowing existing power plants to demonstrate compliance through CPMS tied to the highest hour of emissions from the most recent annual stack test .

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(1)     Declare that EPA's failure to respond to Plaintiffs' April 2012 petition for reconsideration regarding the "highest hour" problem with the CPMS option for monitoring under the MATS Rule constitutes unreasonable delay under Section 304(a) of the Clean Air Act and the APA;

(2)     Enjoin EPA from further delaying a substantive response to the portion of the petition for reconsideration regarding the "highest hour" problem with the CPMS option for monitoring under the MATS Rule by ordering EPA to respond to that portion of the petition within 30 days;

(3)     Award Plaintiffs their costs of litigation, including reasonable attorneys' fees, under Section 304(d) of the Clean Air Act, 42 U.S.C 7604(d); and

(4)     Grant Plaintiffs such further relief as the Court deems just and proper.

Respectfully submitted this 21st day of November, 2014,

/s/ Jennifer Duggan
JENNIFER DUGGAN, D.C. Bar. No. 978352
Environmental Integrity Project
1000 Vermont Ave., NW, Suite 1100
Washington, D.C. 20005
Tel: (802) 225-6774
jduggan@environmentalintegrity.org

*Attorney for Plaintiffs*